Elizabeth L. Hausbeck
Jennifer L. Swajkoski
HALL BOOTH SMITH, P.C.
101 East Front Street, Suite 402
Missoula, MT 59802
Phone: (406) 317-0070
Fax: (406) 919-7889
ehausbeck@hallboothsmith.com
jswajkoski@hallboothsmith.com

*Attorneys for Richard Foutch
and AB Staffing Solutions, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| ANDREW RUNNING CRANE, individually, and as Personal Representative of the Estate of Michael Running Crane, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, JOSE ORTIZ, RICHARD FOUTCH and AB STAFFING SOLUTIONS, LLC <br><br> Defendants. | CV-21-86-GF-BMM <br><br><br> **RICHARD FOUTCH AND AB STAFFING SOLUTIONS, LLC'S STATEMENT OF UNDISPUTED FACTS** |
| UNITED STATES OF AMERICA, <br><br> Cross-Claimant, <br><br> v. <br><br> AB STAFFING SOLUTIONS, LLC, <br><br> Cross-Defendant. | |

Defendants Richard Foutch, MD ("Dr. Foutch") and AB Staffing Solutions, LLC ("AB Staffing"), by and through their counsel of record, Hall Booth Smith, P.C., hereby submit their Statement of Undisputed Facts in support of their Motion for Summary Judgment.

1.    This is a medical malpractice action stemming from care and treatment provided to Michael Running Crane in November of 2019. 1st Am. Compl. at 3-4, Nov. 23, 2021 (Doc. 11) ("Amended Complaint").

2.    Plaintiff Amended their Complaint in November of 2021, to include AB Staffing, Dr. Foutch and Dr. Jose Ortiz ("Dr. Ortiz") as Defendants. *Id.*

3.    Though not entirely clear, Plaintiffs appear to allege that Dr. Foutch and Dr. Ortiz were negligent and violated the standard of care in failing to properly assess and properly treat Michael Running Crane's condition upon his presentations to [Blackfeet Community Hospital] in November of 2019. Am. Compl.at 3-4.

4.    Plaintiffs have not identified any direct claims against AB Staffing. *Id.*

5.    Indeed, the sole allegation in the Amended Complaint related to AB Staffing is simply that it "is a company with its principal place of business in Gilbert, Arizona, that had a contract with the United States to provide health care providers on the Blackfeet Indian Reservation at times relevant to this lawsuit." *Id.*, at 2-3, ¶ 6.

6.    Plaintiffs did not identify any specific allegations or claims against AB

Staffing in their initial disclosures. Pl.'s Initial Disclosure, Sep. 8, 2022 (Doc. 41-4).

7.      Plaintiffs likewise did not identify any specific allegations or claims against AB Staffing in their second preliminary pre trial statement, which was filed <u>after</u> the Amended Complaint. Pl.'s Preliminary Pretrial Statement, Mar. 27, 2023 (Doc. 61).

8.      Pursuant to the Court's Scheduling Order, Plaintiffs identified and disclosed the opinions of two medical experts, Dr. Aaron R. Billin ("Dr. Billin") an emergency medicine physician, and Dr. Julie Reznicek ("Dr. Reznicek") an infectious disease physician. 2d Found. Decl. Elizabeth Hausbeck ¶ 3, Jan. 12, 2024 ("2d Decl. Hausbeck"), Ex. A: Pl.'s Expert Disclosure at 1-3, Sep. 18, 2023.

9.      Dr. Billin was deposed and offered sworn testimony on December 4, 2023. 2d Decl. Hausbeck ¶ 4, Ex. B: Excerpts from Dr. Billin's Depo. at 1, Dec. 4, 2023

10.     Dr. Reznicek was deposed and offered sworn testimony on November 21, 2023. 2d Decl. Hausbeck ¶ 5, Ex. C: Excerpts from Dr. Reznicek's Depo. at 1, Nov. 21, 2023.

11.     Neither of the experts disclosed by Plaintiffs offered any opinions or testimony related to AB Staffing. 2d Decl. Hausbeck, ¶¶ 3-5, Exs. A-C.

12.     Pursuant to a Professional Services Agreement, Dr. Foutch was, at all relevant times, an independent contractor and <u>not</u> an employee of AB Staffing.

Under this Agreement, AB Staffing agreed to provide malpractice insurance. 2d Decl. Hausbeck ¶ 6, Ex. D: Prof'l Serv. Agreement between AB Staffing & Dr. Foutch at 1,3,4,7, Aug. 1, 2019.

13.     Pursuant to a Professional Services Agreement, Dr. Ortiz was, at all relevant times, an independent contractor and <u>not</u> an employee of AB Staffing. Under this Agreement, AB Staffing agreed to provide malpractice insurance. 2d Decl. Hausbeck ¶ 7, Ex. E: Prof'l Serv. Agreement between AB Staffing & Dr. Ortiz at 1,3,4,7, June 8, 2018.

14.     At all relevant times herein, AB Staffing was under a contract with the Department of Health and Human Services ("DPHHS") to furnish Medical Provider Locum Services at the Blackfeet Community Hospital ("Agreement to Furnish Locum Medical Services"). This agreement contemplated term length, the hourly fee, method of payment, and right to terminate. 2d Decl. Hausbeck ¶ 8, Ex. F: Initial Contract to Furnish Medical Provider Locum Services between DPHHS/Billings Area Indian Health Services ("Billings HIS") & AB Staffing dated April 1, 2011; 2d Decl. Hausbeck ¶ 9, Ex. G: Am. of Solicitation/Modification of Contract between DPHHS/Billings IHS & AB Staffing, Apr. 1, 2019.

15.     Pursuant to their agreement with DPHHS/Billings IHS, AB Staffing assisted in placing Dr. Foutch and Dr. Ortiz with Blackfeet Community Hospital to provide professional medical services. *Id.*; Am. Compl. at 3.

16.     Dr. Foutch and Dr. Ortiz were, at all relevant times, subject to the rules and oversight of the Blackfeet Community Hospital, 2d Decl. Hausbeck ¶ 8, Ex. F at 12-14.

17.     At all relevant times, Blackfeet Community Hospital was responsible for credentialing and supervising the professional medical services furnished by Dr. Foutch and Dr. Ortiz, as well as for charging patients for services. 2d Decl. Hausbeck ¶ 8, Ex. F at 10-13.

18.     At all relevant times, Blackfeet Community Hospital maintained the right to monitor Dr. Foutch and Dr. Ortiz, and to take Professional Review Action including but not limited to removal, termination, and/or disciplinary action. 2d Decl. Hausbeck ¶ 8, Ex. F: at 12-13.

19.     Additionally, and implicit in the Agreements between DPHHS/Billings IHS and AB Staffing, was the agreement that Blackfeet Community Hospital would provide necessary support staff, space, equipment, and supplies to the Locums Medical Providers placed at its facility by AB Staffing, as well as control over charging patients for services rendered. 2d Decl. Hausbeck ¶¶ 8-9, Exs. F-G.

20.     Of the two experts identified and disclosed by Plaintiffs, only Dr. Billin is qualified to offer opinions on the applicable standard of care for Dr. Foutch and Dr. Ortiz. 2d Decl. Hausbeck ¶¶ 3-5, Exs. A-C.

21.     Indeed, Dr. Reznicek herself testified that she was not offering opinions

on the standard of care for emergency medicine physicians and also that she was not qualified to opine on the standard of care for board certified emergency medicine physicians in Montana. 2d Decl. Hausbeck ¶ 5, Ex.: C: 32:1-10 ("**Q.** And so today you're not here to offer opinions on the standard of care for the two emergency medicine physicians, are you? **A.** Correct[.] **Q.** . . . you would agree you're not qualified to opine on the standard of care for a board certified emergency medicine physician in Montana? **A.** Correct.").

22. In his written expert witness report, Dr. Billin initially offered the following opinions on the standard of care and alleged deviations by Dr. Foutch:

- The standard of care required Dr. Foutch to notify Mr. Running Crane of the results of the blood cultures, and to inform Mr. Running Crane of any follow-up needed,

- Dr. Foutch apparently did not recognize the severity of Mr. Running Crane's illness and failed to administer antibiotics or recommend hospitalization on November 6, 2019,

- Dr. Foutch apparently deleted the electronic notification of the final results of the abnormal blood culture without documenting any attempt to contact the patient for follow-up.

   2d Decl. Hausbeck ¶ 3, Ex. A: at 9-10.

23. The initial blood culture results were reported to Michael Furniss, RN

("Nurse Furniss"). Nurse Furniss did not document what provider he notified or whether there was any attempt to contact Michael Running Crane with the results. 2d Decl. Hausbeck ¶ 3, Ex. A: at 10.

24.     During his deposition on Monday December 4, 2023, Dr. Billin testified under oath regarding his opinions. 2d Decl. Hausbeck ¶ 4, Ex. B.

25.     At his deposition, Dr. Billin confirmed that Dr. Foutch's treatment and recommended decision making regarding further observation of Michael Running Crane was reasonable and appropriate and that antibiotics were <u>not</u> required on November 6, 2019. 2d Decl. Hausbeck ¶4, Ex. B:57: 13-16 (**Q.** Dr. Foutch ordered various imaging and lab work. You would agree his orders were all appropriate and reasonable? **A.** Yes, I do."); 66: 7-8 ("I agree that the initial treatment by Dr. Foutch [] met the standard of care."); 69: 13-16 (**Q.** And do you agree that Dr. Foutch's plan to observe the patient for a longer period of time and then decide whether to admit or discharge was reasonable? **A.** Yes, I do"); 82: 19-22(**Q.** You would agree that at the time Dr. Ortiz discharged Mr. Running Crane, the standard of care certainly didn't require antibiotics? **A.** No, they did not.").

26.     Dr. Billin also testified regarding his opinions on the standard of care as it applies to following up with a patient on blood culture results. Significantly Dr. Billin conceded that the standard of care did not require Dr. Foutch, who was not on shift at the time the results were reported, to personally follow up with Michael

Running Crane regarding his blood culture results. 2d Decl. Hausbeck ¶ 4, Ex.
B:112: 9-11 ("When I say Dr. Foutch would have ideally would have done this, I'm
not saying it's the standard of care for him to do it personally"); 113: 24–114: 5 ("**Q.**
To be fair. So just to put a nice bow on that, to your opinion, someone should have
followed up with the culture result, but you're not saying that Dr. Foutch necessarily
breached the standard of care. Is that fair? **A.** Yes.")).

27.     Instead, Dr. Billin testified that the standard of care merely required
<u>someone</u> in the emergency room group to make an effort to contact the patient. 2d
Decl. Hausbeck ¶ 4, Ex. B:77: 19-25 (**Q.** Okay. So going back to my question . . . is
it your testimony, belief and understanding that … an E.R. doc who goes off shift
has the responsibility to follow up on every test he may have ordered, after he leaves
for the day? **A.** Not to follow up personally, but to be confident that that patient will
be followed up under institutional policies that do their best to guarantee that."); 112:
6-8)("I believe the standard of care is for someone in that emergency room group to
follow up and contact – make an effort to contact the patient.")).

28.     As a result, Dr. Billin no longer holds any opinions that Dr. Foutch
breached the applicable standard of care when providing care and treatment to

//


//

Michael Running Crane in November of 2019.

Respectfully submitted this 12th day of January 2024.

**HALL BOOTH SMITH, P.C.**
*Attorneys for Richard Foutch*
*and AB Staffing Solutions, LLC*


  /s/ Elizabeth L. Hausbeck
Elizabeth L. Hausbeck