IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA, GREAT FALLS DIVISION

--- 

# CERTIFIED TRANSCRIPT

| | |
|---|---|
| Andrew Running Crane,<br>individually, and as Personal<br>Representative of the Estate of<br>Michael Running Crane,<br><br>           Plaintiff(s),<br><br>    vs.<br><br>United States of America, Jose<br>Ortiz, Richard Foutch and<br>AB Staffing Solutions, LLC,<br><br>          Defendant(s).<br>_____<br><br>***AND ALL RELATED CROSS-CLAIMS.***<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) No. CV-21-86-GF-BMM<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  ***VIDEO RECORDED***<br> |


REPORTER'S DAILY TRANSCRIPT OF DEPOSITION PROCEEDINGS
AARON ROBERT BILLIN
(TOTAL OF 156 PAGES)
1102 BECK AVENUE
CODY, WYOMING
MONDAY, DECEMBER 4, 2023


DENISE KING PADDOCK
COURT REPORTER

120423 120423 OCR CV-21-86-GF-BMM CRANE V USA BILLIN

1 <u>**A P P E A R A N C E S**</u>

2 CIVIL CASE NO. CV-21-86-GF-BMM

3 IN BEHALF OF THE PLAINTIFF(S):

4         **Timothy M. Bechtold**
        Attorney at Law
5         Bechtold Law Firm, PLLC
        P.O. Box 7051
6         Missoula, MT 59807-7051

7 IN BEHALF OF THE DEFENDANT(S):

8         *Attorneys for Richard Foutch*
        *and AB Staffing Solutions, LLC*
9         **Elizabeth L. Hausbeck**
        **Jennifer L. Swajkoski (not present)**
10         Attorneys at Law
        Hall Booth Smith, P.C.
11         101 East Front Street, Suite 402
        Missoula, MT 59802
12

13         *Attorneys for Dr. Jose Ortiz*
        **Benjamin K. Lusty (remote)**
14         **Rencher Anjewierden (not present)**
        Attorneys at Law
15         Rencher Anjewierden, LLC
        460 South 400 East
16         Salt Lake City, Utah 84111

17         *Attorneys for United States of America*
        **Abbie J.N. Cziok (remote)**
18         Assistant United States Attorney
        U.S. Attorney's Office
19         901 Front St., Suite 1100
        Helena, MT 59626

20 ALSO PRESENT:

21         **Joel Hageman,** Technical Operator

22         **Amy Smith (remote),** Insurance Adjuster

23

24

25

*OFFICIAL COURT RECORD*

120423 120423 OCR CV-21-86-GF-BMM CRANE V USA BILLIN

### ALPHANUMERIC INDEX

**DEPONENT:**                                                    **PAGE:**

**AARON ROBERT BILLIN**
called by Plaintiff(s)............................    1
EXAMINATION
BY MR. LUSTY.....................................  115
EXAMINATION
BY MS. CZIOK....................................  143
EXAMINATION RESUMED
BY MS. HAUSBECK.................................  147


**PROCEEDINGS:**                                                **PAGE:**

Recess taken at 14:11 on 12-04-2023..............   51
Recess taken at 15:21 on 12-04-2023..............   96
Recess taken at 15:55 on 12-04-2023..............  114
Recess taken at 15:57 on 12-04-2023..............  114


### INFORMATION REQUESTED

**PAGE:**   **LINE:**

50       4
74      23
76      12
109      11


**EXHIBIT(S)/DESCRIPTION(S):**                                  **PAGE:**

K, Billin expert report..........................    9

L, Billin C.V....................................   10

| | |
|---|---|
| 1 | CODY, WYOMING; MONDAY, DECEMBER 4, 2023 |
| 2 | TECHNICAL OPERATOR:  Let the record show that this is |
| 3 | the videotaped deposition of Aaron R. Billin, MD, in the matter |
| 4 | of Aaron or -- Andrew Running Crane, individually, and as |
| 13:00  5 | personal representative of the estate of Michael Running Crane, |
| 6 | Plaintiff, vs. the United States of America, et al., |
| 7 | Defendants, United States of America, Cross-Claimant vs. |
| 8 | AB Staffing Solutions, LLC, Cross-Defendant, in the |
| 9 | United States District Court for the district of Montana, |
| 13:00 10 | Great Falls Division, Cause No. CV-21-86-GF-BMM. |
| 11 | The date today is December 4th, 2023. |
| 12 | The time on the video monitor is 1:00 p.m. |
| 13 | My name is Joel Hageman. |
| 14 | I am the videotape operator today. |
| 13:00 15 | The court reporter today is Denise King Paddock. |
| 16 | Counsel, please voice identify yourselves and state |
| 17 | whom you represent. |
| 18 | MS. HAUSBECK:  Liz Hausbeck on behalf of AB Staffing |
| 19 | and Dr. Richard Foutch. |
| 13:01 20 | MR. BECHTOLD:  This is Tim Bechtold on behalf of the |
| 21 | plaintiff. |
| 22 | MS. CZIOK:  Abbie Cziok on behalf of the |
| 23 | United States. |
| 24 | MR. LUSTY:  Ben Lusty appearing pro hac vice for |
| 13:01 25 | Defendant Jose Ortiz. |

*OFFICIAL COURT RECORD*

```
     1            TECHNICAL OPERATOR:  Will the court reporter please

     2    swear in the witness.

     3                   AARON ROBERT BILLIN,

     4            deponent, called by Plaintiff(s), affirmed

13:01  5    BY MS. HAUSBECK:

     6    Q.  Doctor, could you state your name for the record.

     7    A.  Aaron Robert Billin.

     8    Q.  And is it okay if I call you "Dr. Billin"?

     9    A.  Absolutely.

13:01 10    Q.  Okay; and, Dr. Billin, what is your occupation?

    11    A.  I am a physician.

    12    Q.  What kind of a "physician"?

    13    A.  Board certified in family practice, but have been

    14    practicing emergency medicine for the last 25 years.

13:02 15    Q.  Dr. Billin, where do you reside?

    16    A.  I reside west of Cody, Wyoming, towards Yellowstone Park.

    17    Q.  What town is your mailing address?

    18    A.  Cody, Wyoming.

    19    Q.  And where do you currently work?

13:02 20    A.  I work at Powell Valley Healthcare in Powell, Wyoming.

    21    Q.  And how far is Powell from Cody?

    22    A.  Twenty-five to 30 miles.

    23    Q.  Do you also work in Cody, currently?

    24    A.  I am employed as the Park County health officer.

13:02 25    Q.  Okay.
```

*OFFICIAL COURT RECORD*

| | |
|---|---|
| 1 | No reason to doubt that? |
| 2 | A. No reason to doubt that. |
| 3 | Q. Okay; and as far as what you've recorded in your note from |
| 4 | the medical records, Dr. Foutch's history of present illness, |
| 14:26 5 | Mr. Running Crane reported a sore throat -- true -- |
| 6 | A. Correct. |
| 7 | Q. -- congestion -- |
| 8 | A. Yes. |
| 9 | Q. -- productive cough -- cough -- |
| 14:26 10 | A. Yes. |
| 11 | Q. -- and on physical exam, his lungs were clear? |
| 12 | A. Correct. |
| 13 | Q. Dr. Foutch ordered various imaging and labwork. |
| 14 | You would agree his orders were all appropriate and |
| 14:26 15 | reasonable? |
| 16 | A. Yes, I do. |
| 17 | Q. And the imaging was, essentially, "normal." |
| 18 | Is that your understanding? |
| 19 | A. The chest X-ray, the abdominal CT, yes. |
| 14:26 20 | Q. Was there any other imaging that was done? |
| 21 | A. I believe that was the only imaging that was done. |
| 22 | Q. Okay; and so both were essentially "normal"? |
| 23 | A. Yes. |
| 24 | Q. Okay.  Let's talk a little bit about the labs and just labs |
| 14:26 25 | in general. |

*OFFICIAL COURT RECORD*

**Ex. B - 6 of 13**
**Ex. B - 6 of 13**

| | |
|---|---|
| 1 | "Atelectasis" means the collapse of air cells. |
| 2 | Q.  Okay.  Okay.  Let's go to Page 2 of your report. |
| 3 | The first full paragraph you talk about the treatment |
| 4 | and Dr. Foutch's medical decision-making. |
| 14:38  5 | Do you agree that the treatment administered or |
| 6 | prescribed by Dr. Foutch was reasonable? |
| 7 | A.  I agree that the initial treatment by Dr. Foutch was -- met |
| 8 | the standard of care. |
| 9 | Q.  Okay; and you would agree that he -- I've read a lot of |
| 14:39 10 | E.D. notes in my career -- you would agree that he was actually |
| 11 | pretty thorough for documentation for an E.D. provider? |
| 12 | A.  I agree that he was thorough, particularly for the |
| 13 | electronic medical record used in -- used in IHS facilities. |
| 14 | Q.  Do you agree his differential diagnosis was reasonable, |
| 14:39 15 | based on what he was seeing? |
| 16 | A.  "Reasonable," but not "complete." |
| 17 | Q.  What was "not complete" about it? |
| 18 | A.  I believe he should have included significant bacterial |
| 19 | infection in his differential diagnosis. |
| 14:39 20 | Q.  What do you base that opinion on, knowing that we don't |
| 21 | have the lab -- we don't have the cultural report back yet, at |
| 22 | this point in time? |
| 23 | A.  The fact that the patient met the diagnostic criteria at |
| 24 | this time for sepsis, which is not known to be caused by viral |
| 14:40 25 | infections. |

*OFFICIAL COURT RECORD*

**Ex. B - 7 of 13**
**Ex. B - 7 of 13**

120423 120423 OCR CV-21-86-GF-BMM CRANE V USA BILLIN

| | |
|---|---|
| 1 | A.  Yes. |
| 2 | Q.  Dr. Foutch's shift ended at 6:00 a.m. -- |
| 3 | You're aware of that correct?  Correct? |
| 4 | A.  Yes. |
| 14:43  5 | Q.  -- and he transferred care over to Dr. Ortiz. |
| 6 | I'm assuming that's typical, every E.D. shift you |
| 7 | work, ultimately you're transferring care over to the next E.D. |
| 8 | provider coming on shift? |
| 9 | A.  That's correct. |
| 14:43 10 | Q.  And that's commonplace -- right -- to turn the care over to |
| 11 | the next E.D. provider? |
| 12 | A.  Yes. |
| 13 | Q.  And do you agree that Dr. Foutch's plan to observe the |
| 14 | patient for a longer period of time and then decide whether to |
| 14:43 15 | admit or discharge was reasonable? |
| 16 | A.  Yes, I do. |
| 17 | Q.  Okay.  Do you agree with the general proposition that |
| 18 | patients have some responsibility for their own medical care? |
| 19 | A.  I do. |
| 14:44 20 | Q.  And while you, as the MD, you can make various |
| 21 | recommendations, but that doesn't mean a patient's always going |
| 22 | to follow your recommendations, does it? |
| 23 | A.  Correct. |
| 24 | Q.  And you agree that they hold some responsibility if they |
| 14:44 25 | choose not to follow the recommendations you make? |

*OFFICIAL COURT RECORD*

1    come and go and to not give much thought.

2            Do I think it's appropriate?  No, I don't.

3    Q.  That wasn't my question.

4            Do you mind reading back my question.

14:55  5    (Record read.)

6            THE DEPONENT:  I believe it is the responsibility of

7    a physician to practice at an institution or emergency room

8    that has policies in place that provide for the appropriate

9    follow-up of a patient.

14:55  10           If lab results ordered during the emergency room

11   visit come back after they leave, it is the responsibility of

12   the physician to only work in emergency rooms that have an

13   adequate policy that makes sure the patient's taken care of.

14   Q.  BY MS. HAUSBECK:  And do you know what the typical practice

14:55  15   was at the IHS where Mr. Running Crane was seen?

16   A.  I have seen their policy on the follow-up of critical lab

17   results, but I do not know anything about its implementation in

18   any way.

19   Q.  Okay.  So going back to my question that she just read, so

14:55  20   is it your testimony, belief and understanding that a doc -- an

21   E.R. doc who goes off shift has the responsibility to follow up

22   on every test he may have ordered, after he leaves for the day?

23   A.  Not to follow up personally, but to be confident that that

24   patient will be followed up under institutional policies that

14:56  25   do their best to guarantee that.

Ex. B - 9 of 13
Ex. B - 9 of 13

1    A.  I would agree with you that his vital signs had returned to

2    "normal."

3    Q.  He was he mow dynamically stable?

4    A.  Correct.

15:01 5    Q.  No ongoing signs of any sort of sepsis or anything that

6    could be associated with sepsis, by the time of discharge,

7    realizing he's had some treatment?

8    A.  Keep in mind he met the well-accepted standard for the

9    diagnosis of sepsis, and that does not go away because his

15:01 10   vital signs returned to "normal."

11   Q.  Okay.  But, again, going back to my questions at the time

12   of discharge, he was doing well, with no signs of sepsis?

13            I get it.

14            You're saying that at the time he was admitted in

15:01 15   triage, when we take that, we take the lab values; but at this

16   point in time, no -- nothing's screaming "bacteria infection"

17   at the time he's discharged?

18   A.  In terms of his physical findings and vital signs, no.

19   Q.  You would agree that at the time Dr. Ortiz discharged

15:02 20   Mr. Running Crane, the standard of care certainly didn't

21   require antibiotics?

22   A.  No, they did not.

23   Q.  So you agree with me; right?

24            I just want to make sure the record's clear.

15:02 25            We had a bunch of double negatives in there.

*OFFICIAL COURT RECORD*

| | |
|---|---|
| 1 | Do you see that? |
| 2 | A.  Yes, I do. |
| 3 | Q.  Was it below the standard of care, in your mind, that |
| 4 | Dr. Foutch did not make efforts to contact the patient on |
| 15:52 5 | November 9th? |
| 6 | A.  I believe the standard of care is for someone in that |
| 7 | emergency room group to follow up and contact -- make an effort |
| 8 | to contact the patient. |
| 9 | When I say if Dr. Foutch ideally would have done |
| 15:52 10 | this, I'm not saying it's the standard of care for him to do it |
| 11 | personally; but I think when he saw the electronic notification |
| 12 | of the positive blood culture result, that would have caused |
| 13 | him to shoot a text to his colleague, Dr. Ortiz, or to -- or to |
| 14 | look at the medical record to see if it had been addressed. |
| 15:53 15 | I would never delete a notification from my queue, |
| 16 | unless I know it had been taken care of. |
| 17 | Q.  And you understand he didn't "delete" it? |
| 18 | A.  Remember, that's why I said, delete the "notification," not |
| 19 | delete the "lab result." |
| 15:53 20 | Q.  And I might be wrong on this, but it's my understanding he |
| 21 | didn't "delete" anything. |
| 22 | He acknowledged that the (indicating) that the lab |
| 23 | result was there and that -- and that it's like a calendar |
| 24 | invite, you know, when you see it and you accept it and it goes |
| 15:53 25 | away.  You don't physically "delete" it. |

Ex. B - 11 of 13
Ex. B - 11 of 13

120423 120423 OCR CV-21-86-GF-BMM CRANE V USA BILLIN

1        Does that -- and I might be wrong on that, but that's

2    my understanding of your testimony.

3    A.  I understand what you're saying; but with my knowledge of

4    multiple medical -- electronic medical records, I think it's

15:53 5    unlikely that acknowledging that he saw it would cause it to go

6    away.

7        It goes away when you say "this has been resolved,"

8    and there's a button that you push in most EMRs that says

9    "issue resolved, this may come off the list."

15:53 10   Q.  And you haven't read the testimony of the folks from

11   Blackfeet Community Hospital on this issue.

12   A.  Yes, I have.

13   Q.  You didn't tell me about those depositions.

14   A.  I was not under the impression that it was a "deposition."

15:54 15       I thought it was another submission where they talked

16   about the -- well, maybe I'm referring to Dr. Reznechez's

17   testimony -- deposition, in which they talked about "audits."

18   Q.  Oh.

19   A.  That may be what I'm thinking of.

15:54 20   Q.  Okay.  So you haven't read the depositions of the people

21   who work at Blackfeet Community Hospital that were taken in

22   this matter, other than Michael Furniss.

23   A.  No, I haven't.

24   Q.  To be fair.

15:54 25       So just to put a nice bow on that, to your opinion,

*OFFICIAL COURT RECORD*

1    someone should have followed up with the culture result, but

2    you're not saying that Dr. Foutch necessarily breached the

3    standard of care.

4                Is that fair?

15:54  5    A.  Yes.

6    Q.  Okay.  Why don't we take a break, and then I think I'm

7    going to let my colleagues ask you some questions, and then I

8    may have some follow-up afterwards; but why don't we take just

9    a quick break, and then I'll turn it over to them, I think.

15:55  10               TECHNICAL OPERATOR:  We'll go off the record.

11               The time is 3:55.

12         (Recess taken at 15:55 on 12-04-2023.)

13               TECHNICAL OPERATOR:  We're back on the record.

14               The time is 3:56.

15:56  15               MS. HAUSBECK:  Dr. Billin, thank you for your time

16    today.

17               That's all I have for you right now.

18               THE DEPONENT:  Thank you very much.

19         (Discussion held off the record.)

15:57  20               TECHNICAL OPERATOR:  We'll go off the record.

21               The time is 3:56.

22         (Recess taken at 15:57 on 12-04-2023.)

23               TECHNICAL OPERATOR:  We are back on the record.

24               The time is 4:01.

16:02  25               MS. CZIOK:  Ben, would you like to jump in and ask

*OFFICIAL COURT RECORD*

Ex. B - 13 of 13
Ex. B - 13 of 13